UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| NICHOLAS SIMPSON, on behalf of himself and all others similarly situated, | Civil Action No.: |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| vs. | |
| PARK HAPPY, LLC, | **JURY DEMANDED** |
| Defendant. | |

1. Plaintiff brings this action on behalf of himself and all other vehicle owners who were unlawfully mailed parking citations by Defendant Park Happy LLC ("Defendant" or "Park Happy,") and whose personal information Park Happy illegally obtained through knowing violations of federal law.

## INTRODUCTION

2. Park Happy is a privately owned company that operates parking lots and garages throughout the State of Tennessee.

3. On the surface, Park Happy's business model simply involves charging drivers to park at its facilities. However, Park Happy's true revenue generator is built around the violation notices it issues to drivers after they leave Park Happy's facilities. Those violations can dwarf the actual parking fee by up to ten times the original cost of parking.

4. The violation notices at issue are designed to look like official parking

1

tickets and contain legal language demanding that the vehicle owner pay immediately or "disprove" the "debt" within thirty days.

5. In order to mail its extortionate violation notices, Park Happy must first determine the private address at which the vehicle owner resides. In order to find this private personal information, Park Happy illegally obtains it from official motor vehicle records, in violation of the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721, *et seq*.

6. The DPPA requires Park Happy to receive the prior express written consent of all consumers prior to Park Happy's invasion of their privacy. 18 U.S.C. § 2721(b)(13).

7. Park Happy did not receive prior express written consent from Plaintiff nor any Class Member prior to invading their privacy.

8. Park Happy knowingly, willfully, or recklessly obtained, disclosed, and/or used Plaintiff and the Class Members' personal information for a purpose not permitted by the DPPA. As a result, Plaintiff seeks to represent a class of persons who were mailed such violation notices and whose personal information Park Happy illegally obtained in violation of the DPPA.

9. Plaintiff seeks, on behalf of himself and each member of the proposed Class, statutory damages under the DPPA in the amount of $2,500, reasonable attorney's fees and other litigation costs reasonably incurred, and such other equitable relief as the court determines appropriate, including injunctive relief in the form of a prohibition on Defendants obtaining, using and disclosing personal information obtained from the DMV to send surprise bills through the mail.

## BACKGROUND OF THE DPPA

10. In 1994, Congress enacted the DPPA in order to protect the personal information of drivers in the United States. This federal law was designed to address growing concerns about the misuse of personal data collected by state departments of motor vehicles ("DMV"). By regulating the disclosure and use of personal information contained in motor vehicle records, the DPPA ensures that this sensitive data is only accessible for legitimate and specified purposes. The DPPA's primary goal is to safeguard individuals' privacy and prevent the invasion of that privacy and the exploitation of personal information for purposes such as solicitation, marketing, and identity theft.

11. Historically, the DPPA was a response to several high-profile incidents where personal information obtained from DMV records was used for harmful purposes, including intimidation and harassment. The act was championed by Congress as a necessary step to enhance privacy protections in an increasingly data-driven society. Its passage marked a pivotal moment in the evolution of privacy law in the United States, setting a precedent for subsequent legislation aimed at protecting personal data.

12. In creating special protections for data in this context, the DPPA responded to concerns over the personal information captured and retained by State DMVs. Congressional testimony in 1993 noted the potential privacy threats directly related personal safety concerns from disclosure of personal information held by DMVs: "[u]nlike with license plate numbers, people concerned about privacy can usually take reasonable steps to withhold their names and address[es] from strangers, and thus limit their access to personally identifiable information" in other records. See 140 Cong. Rec. H2523 (daily ed. Apr. 20, 1994) (statement of Rep. Edwards); ibid. (statement

of Rep. Moran).

13. The effect of the DPPA has been profound, establishing a legal framework that mandates strict confidentiality and restricts access to motor vehicle records. Under the DPPA, personal information such as names, addresses, and Social Security numbers cannot be disclosed without the driver's written consent, except for certain permitted uses, such as law enforcement activities. The act imposes penalties for unauthorized access and misuse of this data, thereby deterring potential abusers and reinforcing the importance of data privacy. By providing a clear legal standard, the DPPA aims to reduce the risks associated with the widespread availability of driver information.

14. Specifically, "personal information" protected by the DPPA "means information that identifies an individual," which may "include[e] an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information . . . " that is obtained "in connection with a motor vehicle record." 18 U.S.C § 2725(3) (emphasis added); 18 U.S.C § 2721(a)(1).

15. Pursuant to 18 U.S.C § 2724, "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains."

16. The DPPA contains a private right of action for "the individual" whose personal information was knowingly obtained, disclosed, or used "for a purpose not permitted" under § 2721(b). See 18 U.S.C. § 2724(a); 18 U.S.C. § 2722(a) ("It shall be unlawful for any person knowingly to obtain or disclose personal information . . . for any use not permitted under section 2721(b) of this title.").

4

17. Regrettably, there are still occasions where unscrupulous actors like Park Happy disregard the DPPA and abuse the personal information contained in DMV records for illicit purposes. This is one such case. Park Happy's entire business model is based on flouting the DPPA and abusing official motor vehicle data to harass and extort consumers. Plaintiff's Complaint seeks stop Park Happy's unlawful conduct and compensate consumers whose privacy rights have been blatantly violated.

## JURISDICTION AND VENUE

18. This Court has original subject matter jurisdiction over this action pursuant to 18 U.S.C. § 2724(a) and 28 U.S.C. § 1331.

19. This Court has personal jurisdiction over Park Happy because it is headquartered in Nashville, Tennessee and because it regularly transacts business within the State of Tennessee.

20. Venue is proper in this Court under 28 U.S.C. § 1391(b) and (c).

## PARTIES

21. Plaintiff Nicholas Simpson is a natural person, residing in Dickson, Tennessee, and is the owner of the vehicle referenced herein.

22. Park Happy, LLC is an active domestic limited liability company that operates parking lots and garages throughout the State of Tennessee, with a principal address of 1300 Pillow Street, Nashville, Tennessee 37203-5312.

## FACTUAL ALLEGATIONS

23. Park Happy manages and operates parking lots and garages throughout the State of Tennessee. Park Happy identifies itself as "The Friendly Parking People" on its website, which also features a chipper cartoon parking attendant mascot.

24. Ominously, however, the main page of Park Happy's website also features a "Pay Violation" button.

25. Park Happy utilizes camera-based license plate detection and recognition technology to manage its parking lots and garages. This technology captures, stores and transmits images of the license plates on drivers' vehicles entering and exiting its parking facilities.

26. As a vehicle exits a Park Happy parking facility, Park Happy captures an image of the driver's license plate and then utilizes that image to determine whether the driver associated with the vehicle tendered any payment prior to their departure. Once Park Happy determines that a fee is due, it then mails violation notice to the registered owner of the vehicle.

27. In order to mail violation notice, Park Happy must first identify the vehicle owner and obtain his or her sensitive information, including their mailing address. Park Happy locates this information by illegally accessing and examining official motor vehicle records and then searching for the consumer using their license plate number. Park Happy uses this illegally obtained information to issue the citation via mail.

28. On or around November 4, 2023, Plaintiff parked his Yamaha motorcycle within a Park Happy facility located at 154 Broadway and Division, Nashville, Tennessee.

29. When he departed the lot, Plaintiff believed his parking had been paid and that he owed no additional moneys to Park Happy.

30. Plaintiff saw no signs or notices at or around the lot.

31. Plaintiff never provided Park Happy with his name or address.

32. Plaintiff never gave consent to Park Happy to obtain any records of any kind

6

pertaining to Plaintiff.

33. By violation notice dated January 4, 2024, Park Happy informed Plaintiff that he owed Park Happy the amount of $91.00.

34. The violation notice was mailed by Park Happy to Plaintiff's home address, which Park Happy illegally obtained from the State DMV.

35. The violation notice informs Plaintiff that he must pay immediately or "disprove" the "debt" within thirty days.

36. Park Happy injured Plaintiff when it invaded his right to privacy by unlawfully obtaining personal information about him from the State's DMV database.

37. Park Happy's invasion of privacy resulted in distress to Plaintiff.

38. Park Happy injured Plaintiff and the Class when it invaded their right to privacy by unlawfully obtaining information about them from the State's DMV database.

39. Park Happy's illegal citation to Plaintiff included a photograph of Plaintiff's license plate, taken by Park Happy's on-site camera equipment.

40. Upon information and belief, once Park Happy captured Plaintiff's license plate number, it then unlawfully queried official motor vehicle records to identify Plaintiff and acquire his sensitive personal information without his written consent, including his home address. Park Happy then mailed its illegal citation to Plaintiff.

41. Park Happy did not receive Plaintiff's express written consent prior to accessing his personal information as required by the DPPA, 18 U.S.C. § 2721(b)(12).

42. Plaintiff has never waived his right to privacy under 18 U.S.C. § 2721(d).

43. Upon information and belief, Park Happy utilized these or similar methods to send

7

its illegal citations and collect money from the putative Class Members who entered parking garages or lots managed or operated by Park Happy throughout Tennessee.

44. The DPPA governs the manner by which certain personal information can be accessed or disclosed and imposes penalties for violation of its provisions.

45. Section 2724(a) of the DPPA provides that "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains ..."

46. Defendant is a "person" within the meaning of 18 U.S.C. 2725(2).

47. Defendant accessed Plaintiff's "Personal Information" as defined in the DPPA to mean "information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status." 18 U.S.C. § 2725.

48. A "motor vehicle record" is defined in the DPPA to mean "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles…" Id.

49. DPPA Section 2721(b) provides a set of "permissible uses" of personal information. The permissible use exemptions to the DPPA allow the use of such information for a limited number of purposes designed to promote public welfare.

50. Defendant's use of official motor vehicle records to send parking citations to Plaintiff and the Class is not a permissible use of such information under the DPPA.

51. Defendant's conduct as set forth above caused harm to Plaintiff and the Class

Members by violating their statutory rights, invading their privacy, intrusion upon seclusion, distress, harassment and annoyance.

52. Accordingly, Plaintiff has standing to bring his claims under the DPPA. *See Garey v. James S. Farrin, P.C.*, 35 F.4th 917, 922 (4th Cir. 2022) ("At bottom, the DPPA is aimed squarely at 'the right of the plaintiff, in the phrase coined by Judge Cooley, 'to be let alone.''") (quoting William L. Prosser, Privacy, 48 Calif. L. Rev. 383, 389 (1960)).

## CLASS ACTION ALLEGATIONS

53. Plaintiff repeats and realleges allegations 23 through 52 above as if fully set forth herein.

54. Plaintiff brings this action pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of herself and on behalf of all other persons similarly situated.

55. Plaintiff proposes the following Class definition, subject to amendment as appropriate: "All persons who, at any time within the applicable statute of limitations, whose Personal Information, as defined by the DPPA, was obtained by Defendant from the person's motor vehicle record without Defendant first receiving the person's prior express written consent in the four years preceding the filing of the Complaint."

56. Excluded from the Class are Defendant, its parents, subsidiaries, affiliates, officers and directors, and judicial officers and their immediate family members and associated court staff assigned to this case.

57. Plaintiff reserves the right to modify or amend the definitions of the proposed Class before the Court determines whether certification is appropriate.

58. The proposed Class meets the criteria for certification under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

59. **Numerosity**. This action is appropriately suited for a class action. The members of the Class are so numerous that the joinder of all members is impracticable. Plaintiff is informed, believes, and thereon alleges, that the proposed Class contains thousands of individuals who have been damaged by Defendant's conduct as alleged herein, the identity of whom is within the knowledge of Defendant and can be easily determined through Defendant's records.

60. **Commonality**. This action involves questions of law and fact common to the Class. The common legal and factual questions include, but are not limited to, the following:

(a) Whether Defendant had any permissible purpose within the meaning of the DPPA when it obtained the Personal Information of the Plaintiff and the Class;

(b) Whether Defendant obtained the express written consent of the Class prior to accessing their Personal Information;

(c) Whether Defendant invaded the privacy of the Plaintiff and the Class when it illegally obtained their Personal Information;

(d) Whether Defendant obtained, disclosed or used the Personal Information of Plaintiff and the Class in violation of the DPPA and are therefore liable to Plaintiff and the Class;

(e) Whether Plaintiff and the Class are entitled to actual, consequential and punitive damages; and

(f) Whether Plaintiff and the Class are entitled to recovery of attorney's fees and costs.

61. **Typicality**. Plaintiff's claims are typical of the claims of the members of the Class, because, inter alia, Defendant knowingly invaded the privacy of Plaintiff and all class members by accessing their personal information without their express written consent. Moreover, Plaintiff's claims are typical of the class members' claims because Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class. In addition, Plaintiff is entitled to

relief under the same causes of action and upon the same facts as the other members of the proposed class.

62. **Adequacy**. Plaintiff will fairly and adequately protect the interests of the members of the class. Plaintiff will fairly and adequately represent and protect the interests of the class and has retained competent counsel experienced in complex litigation and class action litigation. Plaintiff has no interests antagonistic to those of the class and Defendant has no defenses unique to Plaintiff.

63. **Superiority**. A class action is superior to other methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would be virtually impossible for a member of the Class, on an individual basis, to obtain effective redress for the wrongs done to him or her. Further, even if the Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

64. Plaintiff seeks monetary damages, including compensatory damages on behalf of the Class, and other equitable relief on grounds generally applicable to the entire Class. Unless a Class is certified, Defendant will be allowed to profit from its unfair and unlawful practices, while Plaintiff and the members of the Class will have suffered damages. Unless a Class-wide injunction

is issued, Defendant may continue to benefit from the violations alleged, and the members of the Class and the general public may continue to be unfairly treated.

65. Defendant has acted and refused to act on grounds generally applicable to the Class, making final injunctive relief appropriate with respect to the Class as a whole.

**COUNT ONE**
**(VIOLATION OF DRIVERS PRIVACY PROTECTION ACT,**
**18 U.SC. § 2721, ET SEQ.)**

66. Plaintiff repeats and realleges and realleges allegations 23 through 65 above as if fully set forth herein.

67. Defendant is a "Person" as defined in 18 U.S.C. § 2725(2).

68. Defendant invaded the privacy of Plaintiff and the Class by seeking their "Personal Information" as defined in 18 U.S.C. § 2725(3).

69. Prior to seeking Plaintiff's and the Class Members' Personal Information, Defendant never received express written consent as defined in 18 U.S.C. § 2725(5).

70. The DPPA, 18 U.S.C. § 2722 makes it "unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under Section 2721(b)" of the DPPA.

71. The DPPA, 18 U.S.C. § 2724(a) provides that a "person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains…"

72. Defendant knowingly obtained, disclosed and used Plaintiff's Personal Information obtained from a state motor vehicle record in order to mail him its illegal parking citation, which is not a permissible purpose under the DPPA.

73. Defendant willfully obtained Plaintiff's and the Class Members' information

without their prior express written consent in reckless disregard of the DPPA.

74. As a result of Defendant's conduct and invasion of privacy, Plaintiff and the Class have suffered harm, and are entitled to recover the damages available under the DPPA, plus costs and attorneys' fees, as provided under the DPPA, 18 U.S.C. § 2724(b).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment against Defendant as follows:

A. Certifying this action as a class action under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure and naming Plaintiff as a representative of the class and Plaintiff's undersigned attorneys as Class Counsel to represent the class members;

B. For an Order declaring that Defendant's conduct violated the laws referenced herein;

C. For an Order finding in favor of Plaintiff and the class on all counts asserted herein;

D. For an Order awarding actual, statutory, treble, and punitive damages as applicable;

E. For an Order awarding pre-judgment and post-judgment interest on all amounts awarded;

F. For injunctive relief as pleaded or as the Court may deem proper;

G. For an accounting of all assets, funds, revenues, and profits received and retained by Defendant as a result of its improper actions;

H. For disgorgement and restitution to Plaintiff and the Class members of all monies received or collected from Plaintiff and the Class members and all other forms of equitable relief;

I. For an Order awarding reasonable attorneys' fees and expenses and costs of suit; and

J. For such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury as to all triable issues.

Dated: January 10, 2025

Respectfully submitted,

By: /s/ *R. Scott Pietrowski*
R. Scott Pietrowski (#019853)
David J. DiSabato (*pro hac vice* forthcoming)
Lisa R. Considine (*pro hac vice* forthcoming)
745 Fifth Ave, Suite 500
New York, NY 10151
Telephone: 212-532-1091
Facsimile: 646-417-5967
Email: spietrowski@sirillp.com
Email: ddisabato@sirillp.com
Email: lconsidine@sirillp.com

*Attorneys for Plaintiff and the Proposed Class*